Good morning. I please this court. My name is Harold Gawort and I represent the appellants in this matter. And I have represented them for quite some time. What this case involves before this court is whether or not a party who has no pecuniary interest in the litigation and who has no obligation to pay attorney's fees to her attorney in this case, on any basis in this case, can recover attorney's fees under Rule 37 as awarded originally by the magistrate. What's interesting is, your honors, is that the magistrate awarded $250,000 pursuant to Rule 37 without citing which subsection of Rule 37 that award was being made, yet she was chasing a judgment for $340,000 over which she has no right to claim any money of that judgment. The argument has been and continues to be that she was basically a stand-in or a shill for her former employer who is PETA in this case. And what I'd like to point the Court's attention to is on page 186. Can we start with some basics? Yes. Number one, you sued her, right? We sued in State court in 1989, your honor, yes. So that's how she got in the lawsuit. You sued her. We sued her and we prevailed. And then you lost on appeal. To the State Supreme Court, it was reversed. Went back and forth a few times. Then your clients engaged in a longstanding series of transactions to take their assets away from the reach of the judgment that was ultimately entered against them, right? Your Honor, that's the allegation, but looking at the record, clearly, there is nothing that shows what they did was improper. Okay. Well, let's wipe that off the stage. She's in the suit because you sued her. She was in the suit because we sued her. You ultimately lost the suit. Correct. Okay. And this judgment you're saying they're not entitled to, your client paid. My client paid and the money went to Peter, her employer. Okay. So, and she never incurred any expenses in this case. She never paid one penny of attorney's fees for her own sworn deposition. She says, I've never paid a penny of attorney's fees. I have no arrangement to pay attorneys. And I'm basically not going to pay any attorneys because there's no contract with an attorney to pay because they're all paid for by a third party. So she could suffer no harm in this case. She's not in a grieved party for which it is a requirement in order to incur attorney's fees. And how does the district court sanction what it considers inappropriate behavior in the context of discovery without doing what it did? It made quantum leaps in logic, Your Honor, is my argument that you're not answering my question. I'm going to say I don't understand the question, Your Honor. My question is, you've got a case where the fee arrangement is as in this case. An entity is supplying a lawyer or paying a lawyer for someone in a suit. The other side engages in what the district court or magistrate court thinks is evasive and inappropriate behavior in the discovery process and that sanctions are warranted. What do they do? Award them to the State Bar of Nevada, to the Children's Defense Fund, to Greenpeace? What do they do? They should be awarded to the party who incurred the expenses. And if you're correct that there is no such party, is that your argument? That is correct, Your Honor. Then there's no sanction. In this case, there should be no sanction because they wanted to do whatever your clients did, however they behaved or misbehaved in the discovery process, sanctions could not be awarded against them because of the argument you've just made. Because there's no aggrieved party. I understand the timeline of this thing. They did not ask, the appellees did not ask for money to be repatriated until sometime in late 1999. So a party in your client's position could say to a magistrate judge or district judge, look, I don't care what you say. My client can behave in any way they want to. They can abuse the discovery process. They can hide information. They can refuse to produce documents. They can refuse to appear for discovery. And there is absolutely nothing you can do about it because there's no aggrieved party. Your Honor, in that case, because that's not the record before you, though. I understand. The record before this Court, the record before the magistrate was they produced all documents that they could. Your Honor, I'd be interested in an answer to Judge Hawkins' question. Okay, in that case, could there be a sanction? Yeah, that could be a sanction to the court, for example. Because that would be the only aggrieved party. But it could not be to- The court is a party? No, I'm sorry. They're the ones, for example, that the court can award sanctions payable to the law library, which they do from time to time if there's inappropriate behavior. In this case, my argument is, in the issue before the- Could the court award sanctions under Rule 37? If they would cite the subsection and substantiate with the facts, yes, they could. Because? Because in this case, they always have the inherent power if they give the factual basis and then cite the subsection. The magistrate did not do that in this case, though, Your Honor. That's the problem. Where are we here? How do I argue what subsection or what law, other than Rule 37, my clients were sanctioned, because Rule 37 is broad. There's four or five different subsections in which a court can award sanctions which are distinct, and that's the problem. But my major problem with awarding any award to Roush in this case is, and the magistrate says it himself, shall pay attorney's fees to Roush which were expended to trace. Roush did not expend one penny. And that's the judge's order that everyone relies upon on page 186 of my excerpts. There is no expenditure here, Your Honor. The argument, if accepted, preclude recovery of costs or fees in this circumstance by a contingent fee plaintiff. No. In that case, I would agree with you. A contingent fee plaintiff could because there's an obligation and a contingent fee. There's a contractual relationship there. But there's no obligation to pay fees. If you win, fees are paid out of the award. If you lose, there's Right. But in contingent fee, if you collect, you pay the attorney. In this case, it's the opposite. She says even if I collect, I have no obligation to pay. It's different than a contingency fee arrangement. What about a client who's represented pro bono? My position is they cannot collect attorney's fees, and we cite a tax court case that says that. So in other words, whenever you've got a pro bono plaintiff to take a clean case, although Judge Hawkins' question about contingent fee still remains on the table for me, but take a case that you concede is no attorney's fees under your analysis, whenever a defendant is faced with a plaintiff who's being represented pro bono, it's Katie bar the door in terms of litigation behavior. No, because you can always get sanctions to the court if there is, if an attorney, for example, represents himself. There is a system to sanction that attorney. That is possible. If a party does something in that case, represents himself, you can award sanctions to the opposing side, if that's your question. The problem here is And if I'm an attorney representing pro bono and I've got to put up with all this behavior, this is going to make it very difficult for somebody to decide to represent pro bono, because at the moment, the pro bono lawyer knows that at a minimum, if there's really bad behavior on the other side that unnecessarily and improperly drags out the litigation, at least as to that, the lawyer will get compensated. Right. The difference with pro bono is it's a public policy behind pro bono, such as the FOIA request and those things. This is not a public policy case. This is private litigation. Did you just change your answer? That is to say, are you now saying that a pro bono lawyer can get compensated? If you call pro bono for a public interest law firm, for example. Well, I don't care what it is. Just somebody who says, listen, I'm representing you for free. In that case, I would say they could not, Your Honor. Well, I know I'm running close on time here, but the one other thing I want to point out is we never received any of these billing statements. There's a quarter million dollar attorney's fee sanctions for which my client was prohibited from reviewing those statements. Now, I know they're going to say that I could see them or Mr. Pitaro's attorneys could see them, but that would be a breach of my duty to my clients, the Barasini's, to not allow them to see the statements also to go through them with me, because this is a case where the parties are involved. This is not attorneys litigating. It's parties litigating. And to award any sanction or any attorney's fees, if you get past the first hurdle without reviewing these attorney's fee statements, to me, is just smacks in the face of any kind of due process. It's a taking of a property right without them having a right to a hearing. And we should have the right to do it. There was no order allowing them to do it under seal. I know the judge allowed it, because they said my client goes in there and does vitriolic statements. Well, we disagree with that. There's no basis in the record for that. We have a right to see these statements, to critique these statements, to argue these statements. And Local Rule 5416 of the District of Nevada allows us to go through those statements. And somehow that rule got subverted in this case. You have about 50 seconds left. Would you like to save it for rebuttal? Yes, I would, Your Honor. Thank you very much. For your argument. Gershko. Good morning, may it please the Court. I'd like to point out, to begin with, in Rule 37, not citing the sections, the judge there under the Wanderer case, the magistrate, filed what he had to file, proper findings. But they never raised this issue prior to being in the Court of Appeals. If you look at their exceptions to the order of the magistrate finding sanctions back in 2001, they never raised that issue. They discussed Rule 37 generally and never raised the fact there wasn't a specific section cited. If you look at their exceptions to the actual award of amount of damages in 2002, they never raised it there either. They never raised that issue before it got here to the Court of Appeals. But if I may pick up on your question, Judge Fletcher. Before the district court in any respect? No. They never raised it once in any way in the district court. The first time they raised it was in a brief in this court. Let's not take pro bono. Let's take cases that we see many, many of in our courts. People are represented by insurance companies. Someone gets sued in an auto accident. The lawyer or doctor gets sued in a malpractice case. Under their theory, the plaintiff can engage in the worst chicanery imaginable and have a free ride because the insurance company is paying the fees and the defendant has no obligation to repay those fees. Now, what he says about Gene Rauch is different than the deposition which is cited in the appendix in the excerpts of the record. She didn't know. She said in her testimony as we cited, I'll consult with Mr. Hershcott when that happens. I don't know what I have to do. But it's very clear. We're not talking about an application for attorney's fees. We are talking about sanctions. I won't go through what every judge found, the stonewalling, the obstruction of justice, the fraud on the court. And the Supreme Court and this circuit has made it perfectly plain that a court need not tolerate that, the integrity of the court has to be protected, the ability of people to reach the docket of the court, the discovery process. The language was legion, not throughout our case, but in the State court case. But I'd point to the part of your side of this case that concerns me and you can respond to it. Yes, sir. I think it's appropriate that you know it. The sanctions awarded consisted of attorney's fees, right? Awarded to the attorneys, yes, sir, not to the parties. And it represented the effort of the law firm that was dealing with all of these problems in the discovery process. Three different law firms. This is not a situation where the magistrate judge or the district court simply assessed a fine-like number. It's actually based on time expended and attorney effort, correct? Yes, sir. So in that sense, it's this is very much like an attorney who has an entitlement applying for fees from the court and presenting the court with the records that show I spent this amount of time, this is my hourly rate, it's reasonable, et cetera, and this is the award that I seek, correct? Well, it differs, Your Honor. There's a difference between the Henry v. Gill standard in this court and Rule 5416 in the district court. Let me get to the end and then you can tell me if this process makes a difference for my concern. Yes. My concern is this. Every fee application that I've seen in nine and a half, almost ten years on this court, every fee application I ever saw in 25 years of litigation practice in Arizona, the one side presents their bills, the other side gets a chance to look at them, and that adversary process aids the court in determining whether the fees are reasonable, were actually expended, applied to this case as opposed to another case. That didn't happen here, did it? No, sir. And why didn't it happen? Well, it partly happened. Let me modify that. We followed the Henry v. Gill. It didn't happen in the sense that your opponent didn't, was not given the opportunity to review the billing statements. He was. He was. We filed my affidavit, the eight-page affidavit with attachments, which I modeled on the Henry case. In the Henry case, the court, in a sanctioned setting for discovery abuses, accepted an affidavit of the attorney that laid out what the time was, what the nature of the services were, and what the rates were. Yes, but the magistrate judge, even though your side suggested that there be a mechanism for your opponent to actually review the billing records, am I correct so far? Yes, sir. You actually asked for a protective order to do that, so that the billing records could go to his office and that he and his client in the office could look at those billing statements as long as copies weren't made and then return to the court, right? Yes, sir. And we filed the billing record. You asked for that protective order. It was never entered, right? They never replied. Yes, it was never entered. Never entered. You're correct. Yes, sir. So that process never occurred. What the magistrate judge did was say, I can look at these records, and I can look at these timesheets, and I can tell what's reasonable, and this is reasonable, and here's why. Is that what happened? He looked at my affidavit according to the record that he filed. And he said he had looked at the billing statements to confirm that the affidavit was accurate. But in the exceptions they file, and in the objection they file, they file two different documents. When I filed the report to the magistrate, my affidavit, and I filed the billing statements with the magistrate, they filed objections. And in the objections, they just ignored the protective order issue. They never said what he said here. Well, how can we look at them and not show them to our client? What you're telling me is they didn't oppose the protective order. They neither opposed the protective order or asked to see the documents. In any event, the magistrate judge put it aside and said, this process, this in-camera process, where I look at the bills and I look at the affidavit, will suffice. I don't have to enter this protective order. That's essentially what happened, isn't it? I can't look in his head. The practical effect of what happened, we look at differently, Your Honors. They waived it. They had every opportunity to look at those bills. They could have gone to the magistrate. We object to this protective order. We object to doing anything. We object to your looking at the bills. They never did that, in the exceptions to Judge Pro. They never did that. They had his report. I mean, it clearly raised the objection, we didn't get a chance to look at these bills, right? Yes. They said they weren't filed with us. Every step of the way, they raised that. They raised it in the exceptions to Judge Pro. That's where they were. That's the appropriate place to begin, right? Yes. Well, no, Your Honor, what they should have done is gone to the magistrate when we sent it and said, we'd like to see these bills, but we don't want to look at them without our client, if that's the argument they make it here. Or we'd like to look at these bills before you render an opinion. Or we'd like to be heard on the request for a protective order. They did nothing. When you look at their one and a half page, essentially, objection, it just says, Gene Roush is not entitled to the money. And by the way, we didn't see the bills. It's a little sentence they stick in there. Judge? No, I was following on with Judge Hopkins, and I think you've now answered. Thank you. Yes, sir. If Your Honor please, that basically sums it up. The Rule 37 itself is sanctions and not an award. I have, many times in my 40 years of practicing, judges issue awards and say to the lawyer, what were your fees? Well, we're talking about $200 or $2,000 or $5,000, not $250,000. But we see large awards, and the Gill, the Henry v. Gill case, was a very large award in this circuit where they took an affidavit similar to one I filed that had no background documentation for the judge to check the accuracy of the affidavit. Thank you, Your Honor. Thank you for your argument. Rebuttal? As you walk up, you understand, if we send this back and allow you to look at these bills, that your opponent can look at your bills? You do understand that? I understand. I'm not sure what relationship my bills have, Barry, just to see by comparison. Normally, the first thing that somebody does when there's an objection to their fees is they ask for the other side's billing records.  And they'll often find out the other side spent just as much time as they did. I'll tell you, my fees were about one-third of what their fees were in this case. I just wanted to make sure you understood. I would love to have that comparison, Your Honor. And what I'd like to say is Mr. Hershkoff made the argument about an insurance company. That's not analogous to the situation, because in that case, there's an insurance contract. There is no contract here. Jeanne Roush says under oath, I have paid none. We asked for our attorney's fees. Later on, she says, but there was no formal arrangement about the payment. I.e., there is no contract in this case. We never saw the nature of the work in order to object. We have no way of knowing. And the Gill case, they cite to, where he said he followed it, the court in that case granted approximately one-third of the fees requested in that case. Do you have some objection, if this goes back in order to allow you to look at the billing request, do you have some objection to some sort of protective order? I have no objection, as long as my client is allowed to review those documents with me. We can agree that no copies be made. It wasn't encompassed by the protective order that was requested, right? No, because in that case, and that was in the statement here, I believe, in their motion, they said they wanted defense counsel only to review those bills. They did not want the Barasini's to review those bills, because they were afraid they might take information and print it on the internet, because of their, quote unquote, vitriolic behavior. They never asked, and there's nothing in the motion that says that they would allow even the Barasini's to look at it with no copies made. They wanted only Mr. Pitaro and myself to review these bills. That was the major problem. We'll check the record on that. Thank you very much, Your Honor. Thank you for your time, Judge. As usual, a Nevada case that's interesting and spirited. We'll proceed to the next case. Case just already submitted for decision. We'll proceed to the United States v. Sanders.
judges: Hawkins, W.fletcher, King